UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SEANN PATRICK PIETILA,

    Defendant.
_____/

No. 1:23-MJ-00278

Hon. Sally J. Berens
United States Magistrate Judge

## GOVERNMENT'S MEMORANDUM OF LAW REGARDING DETENTION

Defendant Seann Patrick Pietila was charged by criminal complaint with making interstate threatening communications in violation of 18 U.S.C. § 875(c). (R.1: Compl., PageID.1, R.1-1: Aff., PageID.2-44.) The government moved for detention, citing *United States v. Capriotti*, No. 21-CR-16, 2021 WL 229660, at *3 (N.D. Ill. 2021) (finding a violation of section 875(c) is a "crime of violence") (R.3: Mot., PageID.46.) At the hearing on June 22, 2023, the government sought detention pursuant to 18 U.S.C. § 3142(f)(1)(A) and (f)(2)(A).

After the evidentiary hearing, the Court took the matter under advisement and invited the parties to brief the following legal issues pertaining to the government's detention motion:

    (1) Does the phrase "for which a maximum term of imprisonment of 10 years or more is prescribed" apply to "a crime of violence" in 18 U.S.C. § 3142(f)(1)(A)?

    (2) Can this Court consider the danger to the community if the government is not entitled to a detention hearing under Section 3142(f)(1) but is entitled to a hearing under Section 3142(f)(2)?

(3) Can this Court consider a defendant's suicidal ideations or the risk that he will commit suicide if released?

The government responds as follows:

## I. The Government is Entitled to a Detention Hearing When a Defendant is Charged with a "Crime of Violence" Regardless of the Possible Punishment for that Offense.

The Bail Reform Act of 1984 ("Bail Reform Act"), as amended, provides in pertinent part:

> "The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>
> (1) upon motion of the attorney for the Government, in a case that involves—
>
> (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
> . . .
>
> (2) upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—
>
> (A) a serious risk that such person will flee;
> . . . .

18 U.S.C. § 3142(f)(1)(A), (f)(2)(A). "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987) (citing availability of detention hearings if case involves "crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders").

The "10 years or more" limitation in section 3142(f)(1)(A) applies only to offenses listed in section 2332b(g)(5)(B), not to crimes of violence or violations of section 1591. *See United States v. Santoro*, 359 F. Supp. 3d 122 (D. Maine 2019). *Santoro* undertook a careful analysis of both the plain language of the statute, Supreme Court precedent, and the legislative history to find that Congress did not intend to apply the sentencing limitation to crimes of violence or violations of section 1591.

i. *The Supreme Court's "Rule of the Last Antecedent" Applies.*

In *Lockhart v. United States,* 577 U.S. 347 (2016), the Supreme Court resolved a circuit split on the question of whether the phrase "involving a minor or ward" modified all items in a short list of predicate crimes (aggravated sexual abuse, sexual abuse, or abusive sexual conduct) or only the last crime (abusive sexual conduct). The Supreme Court, applying the "rule of the last antecedent," affirmed the Second Circuit's holding that the phrase only modified the last offense in the list. *Id.* at 349, 350. Although the Court found the list of predicate offenses to be "awkwardly phrased (to put it charitably)," the Court found that the text and context revealed a straightforward reading and that a "timeworn textual canon is confirmed by the structure and internal logic of the statutory scheme." *Id.* at 351. Specifically, the Supreme Court applied the "rule of the last antecedent." *Id.* "The rule provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Id.* (citing *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). "The rule reflects the basic intuition that when a modifier appears at the

3

end of a list, it is easier to apply that modifier only to the item directly before it." *Id.* The rule is not absolute as there sometimes are examples of lists that, when read in context and according to custom, plainly demonstrates the modifier applies to all items (e.g., "the law, the treaties, and the constitution of the United States"). *Id.*

Here, as in *Lockhart*, the rule of the last antecedent applies to the short list of offenses. As with the statute at issue in *Lockhart*, section 3142(f)(1)(A) contains three categories of offenses with the limiting clause appearing after the last offense. And, as in *Lockhart*, "the interpretation urged by the rule of the last antecedent is not overcome by other indicia of meaning." *Id.* at 352.

The district court in *Santoro* correctly applied *Lockhart* to find that the rule of the last antecedent applied to the list of offenses in Section 3142(f)(1)(A). 359 F. Supp. 3d 122, 124-25. *Santoro* also determined that the alternative interpretative canon applying the modifier to the entire list cannot apply because one of the items in the list, violations of section 1591, contains no offenses with penalties less than 10 years in prison (unlike the two other categories of cases). *Id.* at 125. *Santoro* also considered the context and legislative history of that provision to find that the rule of the last antecedent was not overcome by any other indicia of meaning. *Id.* This Court should follow the reasoned decision in *Santoro*.

ii. *Congress Did Not Intend to Narrow the Category "Crime of Violence"*

Section 3142(f)(1)(A), as originally enacted in 1984, provided for a detention hearing upon motion of the government in a case that involves "a crime of violence"

4

without any limitation as to the possible sentence for the offense. *See* Pub. L. 98-473 (HJRes 648), 98 Stat 1837 (Oct. 12, 1984).

Section 3142(f)(1)(A) was amended by the Intelligence Reform and Terrorism Prevention Act of 2004 to ensure the pretrial detention of terrorists and provide a presumption for pretrial detention in cases involving terrorism. *See* Pub. L. 108-458 (S. 2845), 118 Stat 3638 (Dec. 17, 2004). Specifically, in Section 6952 of that legislation, Congress inserted: "', or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed' after 'violence'." *Id.* Additionally, Congress added the phrase: "or an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed" after the words "or 2332b of this title," in section 3142(e)(3)(C). The inclusion of the limiting phrase in both subsections of the Bail Reform Act evidences an intent to apply the "10 years or more" restriction only to the list of offenses in section 2332b(g)(5)(B).

In 2008, Congress added the third category of cases, violations of 18 U.S.C. § 1591 (sex trafficking of children by force, fraud, or coercion), between "a crime of violence" and the reference to section 2332b(g)(5)(B). *See* Pub. L. 110-457(HR 7311), 122 Stat 5044 (Dec. 23, 2008). That insertion was included in Section 224 of the legislation entitled "Bail Conditions, Subpoenas, and Repeat Offender Penalties for Sex Trafficking."

As *Santoro* found, nothing in the amendments to section 3142(f)(1)(A) reflect an intent "to narrow the crimes of violence category." *Id.* at 125. Instead, the

5

legislative history reflects that Congress only inserted two new distinct categories of cases, and the "10 years or more" limitation found in both section 3142(e)(3)(C) and (f)(1)(A) was intended only for the long list of offenses listed in section 2332b(g)(5)(B). This conclusion is supported by the insertion of Section 1591 between "a crime of violence" and the reference to offenses listed in section 2332b(g)(5)(B). *Santoro*, 359 F. Supp. 3d at 125 ("If the existing two categories were limited as a list by the 10-year prison requirement following 2332b(g)(5)(B), the logical place to add the new category would have been at the end, *outside* the limitation clause.") Section 1591, which was first enacted in 2000 and amended seven times, has never included any offenses for which the maximum term of imprisonment was less than 10 years. Moreover, by comparison, the list of offenses in section 2332b(g)(5)(B) include crimes for which the maximum possible punishment is less than 10 years in prison. *See, e.g.*, 18 U.S.C. § 32(c) (punishable by up to five years in prison).

Additionally, the Bail Reform Act references a "crime of violence" without a sentencing limitation elsewhere in the statute, which further demonstrates that Congress did not intend to apply the limiting clause to crimes of violence:

- Section 3142(f)(1)(E): This provision allows the government to move for a detention hearing in a case that involves "any felony *that is not otherwise a crime of violence* that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon,

> or involves a failure to register under section 2250 of title 18, United States Code . . . ." (emphasis added);
>
> - Section 3142(g)(1): The provision requires the Court to consider "whether the offense is *a crime of violence*, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device" (emphasis added).

Those provisions plainly refer to *all* crimes of violence without limitation.

For all those reasons, Congress intended the limiting clause to apply only to the offenses listed in section 2332b(g)(5)(B). A contrary reading is inconsistent with the legislative history, the context, and use of the term "a crime of violence" elsewhere in the statute. The limitation inserted as part of the terrorism amendments could not possibly apply to offenses under section 1591 and Congress did not amend section 3142 to modify the term "crime of violence" as it appears elsewhere in the statute. A consistent reading of "a crime of violence" throughout the statute cannot apply the limiting clause to that term in section (f)(1)(A).

A handful of district courts have incorrectly assumed that the "10 years or more" limitation applies to all three categories of crimes without carefully analyzing the issue or considering applicable Supreme Court precedent. *See, e.g.*, *United States v. Persico*, No. 10-CR-147, 2017 WL 3669554 (E.D.N.Y. 2017) (citing *United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009)); *United States v. Baldazo*, No. 2:11-CR-77, 2012 WL 12947283 (N.D. Ind. 2012); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962 (E.D. Wis. 2008). Those cases are not persuasive because they

merely assume that the government is not entitled to a detention hearing in a case involving a crime of violence unless the punishment is ten years or more in prison. Those courts do not conduct the rigorous analysis that appears in *Santoro* and fail to acknowledge the Supreme Court's rule of the last antecedent in *Lockhart*.

Finally, the government notes that the grand jury returned an indictment charging Defendant with two counts of interstate threatening communications (18 U.S.C. § 875(c)) and one count of communicating a threat to kill or injure by means of fire (18 U.S.C. § 844(e)), the latter being a felony punishable by up to 10 years in prison. "A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (indictment contained charges listed in Section 3142(e)(3), triggering a presumption in favor of detention). The section 844(e) charge is a crime of violence because it has as an element the threatened use of physical force against another person. *See* 18 U.S.C. § 3156(a)(4); *United States v. Williams*, 690 F.3d 1056, 1069 (8th Cir. 2012); *United States v. Flannery*, 103 F. App'x 919, 920 (8th Cir. 2004). As the issue of pretrial detention remains pending, the government is entitled to seek detention under both Sections 3142(f)(1)(A) and (f)(2).

II. **The Court Should Consider the Danger to Any Person or the Community Even if the Government is Not Entitled to a Hearing Under Section 3142(f)(1)(A).**

The Bail Reform Act does not require this Court to turn a blind eye to evidence that Defendant is a danger to the community. Congress vested this Court with the duty and responsibility to determine whether conditions of release will endanger the

safety of the community. *See* 18 U.S.C. 3142(b), (c), (d), (f), (g). Accordingly, even if the sole basis for holding a detention hearing is a serious risk of flight under section 3142(f)(2)(A), this Court may consider the risk of flight and nonappearance, and the danger posed to the community, in determining whether to detain a defendant.

The government acknowledges that there is a split of authority on this issue. On the one hand, courts have found that the criteria for a hearing provided in section 3142(f)(1) and (2) are used only to determine *if* a detention hearing may be held but does not prohibit courts from assessing a defendant's danger to the community. Other courts have concluded that they may not consider dangerousness as a factor when the hearing is conducted pursuant to a motion under Section 3142(f)(2). *See, e.g.*, *United States v. Gibson*, 384 F. Supp. 3d 955, 960-62 (N.D. Ind. 2019) (noting two lines of authority); *United States v. Himler*, 797 F.2d 156 (3d Cir. 1986). It appears, however, that the Sixth Circuit Court of Appeals has not squarely addressed this issue. *See United States v. Cobix-Espinoza*, _ F. Supp. 3d _, No. 3:23-cr-00002-GFVT-MAS, 2023 WL 1860982, *5 (E.D. Ky Feb. 9, 2023) (reviewing cases and concluding that the "Court's analysis under § 3142(e) is not tailored in any way by the Court's finding that the detention hearing was authorized only by the defendant's serious risk of flight under § 3142(f)(2)(A)).

The Bail Reform Act instructs this Court to consider the risk of flight and nonappearance, and the safety of the community, in determining whether to detain or release a defendant after a detention hearing:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or

9

> combination of conditions will reasonably assure the appearance of the person as required *and* the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

18 U.S.C. § 3142(e)(1) (emphasis added). The statute did not use "and/or" in its directive, the reading sought by Defendant in this case. Additionally, in the subsection of the statute providing the basis for holding a detention hearing, Congress instructed:

> The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required *and* the safety of any other person and the community—

18 U.S.C. § 3142(f)(1) (emphasis added). Neither provision states that this Court may not consider the danger to the community if the government is only entitled to move for a hearing under (f)(2).

Moreover, Congress provided a list of "factors to be considered" by this Court "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required *and* the safety of any other person and the community. 18 U.S.C. § 3142(g) (emphasis added). The factors to be considered are not limited to evidence related to the risk of flight or nonappearance. The factors this Court "shall . . . take into account" include "mental condition" and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(3), (4).

Other provisions of the Bail Reform Act also reflect that this Court must consider both the risk of nonappearance and danger to the community in reaching its

10

bond decisions. *See* 18 U.S.C. § 3142(b) (authorizing release on personal recognizance or unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."); 18 U.S.C. § 3142(c)(1) ("If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person" subject to certain conditions); 18 U.S.C. § 3142(c)(1)(B) (twice referring to both nonappearance and danger to community as factors); 18 U.S.C. § 3142(d)(2) (authorizing temporary detention where such person "may flee or pose a danger to any other person or the community.") Those provisions strongly indicate that Congress intended for this Court to consider both the risk of nonappearance and the danger to the community when making *any* decision on release or detention.

This Court should follow the reasoning and conclusion in *Cobix-Espinoza*. _ F. Supp. 3d _, 2023 WL 1860982. In that case, the court found that the text, legislative history, and policy considerations of the Bail Reform Act allow a court to "examine, and order detention based on, the defendant's risk of nonappearance and danger. In other words, the Court's analysis under § 3142(e) is not tailored in any way by the Court's finding that the detention hearing was authorized only by the defendant's serious risk of flight under § 3142(f)(2)(A)." *Id.* at *5. The court agreed that "the structure of [3142(f)] indicates that Congress's aim was not to constrain the basis for

11

detention on the grounds asserted for holding a detention hearing." *Id.* (citing *United States v. Alcorta-Ambriz*, No. 20-mj-1328, 2020 WL 5709149, at *5 (D. N.M. Sept. 24, 2020)). *Cobix-Espinoza* also relied on the other provisions of section 3142, cited above, that direct courts to consider the danger to community without limitation. *Id.*

The countervailing view—that other provisions of Bail Reform Act require this Court to turn a blind eye to evidence of dangerousness—is not persuasive. First, nothing in the Bail Reform Act expressly states that this Court may not consider evidence of dangerousness if the government is not entitled to a hearing under 3142(f)(1). If Congress intended a limitation on the evidence or factors this Court could consider, it would have said so. Instead, Congress spoke on the issue of detention in both subsections (e) and (f) in clear and unambiguous terms: this Court shall consider both risk of nonappearance *and* the safety of the community. There is nothing in the text or structure of section 3142 supporting an inference that subsections (f)(1) or (f)(2) trump the directives in subsections (e) and (f).

Second, judicial officers that do not consider evidence of dangerousness improperly exclude factor (g) from its decision even though Congress stated that courts "shall . . . take into account the available information concerning . . . the nature and seriousness of the *danger to any person or the community* that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Nothing in subsection (g) requires or allows courts to apply the factors only to the question of risk of flight or nonappearance, and it would make no sense to attempt to apply the danger factor in (g)(4) to evidence that a defendant may not appear in court as required.

12

For all those reasons, and consistent with the rationale of *Cobix-Espinoza*, the Court is required to apply all the 3142(g) factors to the evidence of flight risk, risk of nonappearance, and danger to the community. The Court cannot simply ignore the evidence presented at the detention hearing that Defendant is a "danger to any person or the community."

### III. The Court Should Consider Evidence of Defendant's Suicidal Ideation.

The Sixth Circuit Court of Appeals observed that "long-accepted rules of evidence . . . treat suicide as a form of flight." *United States v. Cody*, 498 F.3d 582, 591 (6th Cir. 2007). Additionally, courts have considered evidence of suicide risk in analyzing the risk of flight and nonappearance, and dangerousness to any member of the community, including the defendant. *See, e.g.*, *United States v. Workman*, 680 F. App'x 699, 702-03 (10th Cir. 2017) (Bail Reform Act permits district court to consider defendant's suicidal ideation as one factor in determining whether it can reasonably assure his appearance); *United States v. Krueger*, No. 13-20242, 2013 WL 8584873, at *2 (E.D. Mich. 2013). However, it appears that the Sixth Circuit has not directly addressed "whether suicide risk is a proper factor" to consider under the Bail Reform Act. *United States v. Comberger*, No. 5:21-mj-5138-MAS-1, 2021 WL 1725516, *3 (E.D. Ky Apr. 30, 2021).

In *Kreuger*, the court concluded that "the Bail Reform Act allows and may, in fact, require me to consider the potential of the Defendant committing suicide in the context of assessing his possibility of non-appearance." 2013 WL 8584873, at *2. This is because courts must consider the defendant's mental health under section 3142(g)

13

and consider the nature and seriousness of the danger "to *any* person or the community." *Id.* (citing *United States v. George-Rodriguez*, No. 2:13–CR–378 TS, 2013 WL 3246114, \*6 (D. Utah June 26, 2013) (risk of suicide is one factor to be considered in determining whether defendant is a danger to himself or poses a risk of nonappearance)); *United States v. Wasendorf*, No. CR12–2021, 2012 WL 4052834, \*5 (N.D. Iowa Sept. 13, 2012) (suicide risk is relevant to determine whether there are conditions that "will reasonably assure the appearance" of defendant).

Other courts have considered suicide as a factor in the detention decision. *See United States v. Taylor*, No. CR21-193RSM, 2023 WL 1928167, \*2 (W.D. Wash. Feb. 10, 2023) (history of threats of self-harm and suicide demonstrates likelihood to flee or pose danger to community); *United States v. Drake*, No. 1:19-cr-00402-DCN-1, 2021 WL 1600485, \*5 (D. Idaho Apr. 23, 2021) (considering risk of suicide as flight risk and under section 3142(g)(3)); *United States v. Russo*, No. 2:18-CR-20800-5, 2020 WL 3121272, at \*5 (E.D. Mich. Jan. 2, 2020) (considering evidence that defendant has proven to be a danger to himself); *United States v. Fitzhugh*, No. 16-MJ-30364, 2016 WL 4727480, \*5 (E.D. Mich. Sept. 12, 2016) ("Defendant's suicidal history and unstable mental health make him a danger to himself. Therefore, the Defendant's history and character favors detention rather than release."); *United States v. Robinson*, No. CR12-0089, 2012 WL 5863636, \*4 (N.D. Iowa Nov. 19, 2012) (defendant's attempt to commit suicide one factor in detention order). *But see United States v. Padilla*, 538 F. Supp. 3d 32, 49 (D.D.C. 2021) ("The Court is not even sure that suicidal ideations are probative of flight risk."); *United States v. Metz*, No. 12-M-

14

1193-JJM, 2012 WL 6632501, *2 (W.D.N.Y. Dec. 12, 2012) (finding that words "any other person" in section 3142(e)(1) precludes court from considering suicide risk to defendant himself but may consider suicide as a risk of nonappearance and risk of flight).

This Court should consider the evidence that Defendant suffers from depression, recently expressed suicidal ideation, and the risk he might commit suicide if released. Such evidence is relevant in evaluating the factors in 3142(g) in determining whether this Court has sufficient assurance that defendant will appear as required and the safety of any person and the community. Specifically, evidence of Defendant's suicidal ideation is pertinent to Defendant's history and mental condition (Section 3142(g)(3)(A)) and "the nature and seriousness of the danger to *any* person or the community that would be posed by the person's release." (Section 3142(g)(4)) (emphasis added).

Courts that doubt their ability to consider a defendant's suicidal ideation when ascertaining the danger to the community and/or risk of nonappearance mistakenly focus on only part of the Bail Reform Act text while ignoring other provisions. Those courts point to the use of the phrase "safety of any *other* person" in 3142(e), (f), and (g) in concluding that danger to oneself may not be considered. (emphasis added). However, this view ignores the rest of the sentence "and the community" in those subsections. Defendants are members of the community.

Additionally, courts that refuse to consider suicidal ideation are improperly choosing to ignore (or are too narrowly applying) the factors in section 3142(g)(3)(A),

15

which requires this Court to take into account available information concerning the defendant's mental condition, and the factors in section 3142(g)(4), which instructs this Court to take into account the available information concerning "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." This Court should not turn a blind eye to the evidence that Defendant recently wrote a suicide note, sent messages on Instagram planning a murder-suicide attack, has long suffered from depression, and was allowed to live in a home with access to firearms, ammunition, and other dangerous weapons when considering his mental condition, the danger to himself and the community, and the adequacy of Defendant's proposed release conditions if he is released on bond.

## CONCLUSION

The Court should not apply the 10-year limitation in Section 3142(f)(1)(A) in this case, should consider the danger to any person or the community posed by the release of Defendant, and should consider evidence of his suicidal ideation. The Defendant should be detained and remanded to the custody of the United States Marshal.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: June 28, 2023

/s/ *Christopher M. O'Connor*
CHRISTOPHER M. O'CONNOR
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
christopher.oconnor@usdoj.gov